### OF THE

# COURT OF APPEALS

### OF THE

## STATE OF COLORADO.

---

### APRIL TERM, 1894.

---

THE FARMERS' HIGHLINE CANAL AND RESERVOIR COMPANY v. WHITE.

CONTRACTS—WATER RIGHTS—INJUNCTION.

A provision in a water right contract between an irrigating ditch company and parties owning lands irrigated therefrom, to the effect that if the company should at any time willfully or malignantly fail or refuse to furnish water, the water right holder shall, under specified conditions, have a right to take all the water to which he may be entitled, is contrary to public policy, inoperative and void, and the water right holder should be restrained from the attempted exercise of such supposed right.

*Appeal from the District Court of Jefferson County.*

IN JUNE, 1889, appellant filed a bill in equity praying an injunction, and that the defendant (appellee) be restrained from opening the delivery boxes of plaintiff, and taking from the ditch, for irrigating purposes, water in excess of forty-five inches. Plaintiff is a corporation owning and controlling a ditch for supplying water to its shareholders (and perhaps others) for irrigation. Defendant was and is a landowner

under the ditch, from which he gets his water. In the year 1889, the water allowed the defendant by the plaintiff corporation was forty-five inches. The amount being inadequate, he demanded an additional seventy-five inches, making in all one hundred and twenty inches, and tendered payment for it. The company refused the money, and refused to furnish the water. The following allegation appears in the bill of complaint as the ground for such refusal:

" The said additional seventy-five inches of water, and no part thereof, can be supplied from said ditch to said lands without interfering with, and damage to, the rights and demands of those who, according to law, have a right to demand and receive water from said ditch, and who have demanded and paid for the same, and are entitled to receive the same for the year 1889. That the amount of water applied for and paid for, and which the said company is under law, as far as it is able to do, legally bound to furnish for the year 1889 to the persons who are legally entitled to receive the same, has exhausted, and will continue during the year 1889 to more than exhaust, all the water which said company can or will secure in said ditch, and it is a physical impossibility for it to accede to and comply with the said application and demand of defendant for said additional seventy-five inches of water, or for any part thereof, without interfering with and damaging the rights and claims of others, as above mentioned, and making the plaintiff liable to each and every and to all of said parties having a right thereto."

It is also alleged that on the 31st day of May, after such refusal, the defendant forcibly and wrongfully enlarged the box or opening at the ditch, and took from it, for his own use, the one hundred and twenty inches of water he had formerly demanded, and declared his intention to take, at all times during the irrigating season of 1889, such quantity of water. The facts above stated are conceded by the defendant, and are attempted to be legally justified in the answer.

It appears that in the early history of the ditch it was known as the " Golden Canal," was of limited capacity, and

all the water carried was for the use of the stockholders, who were the owners of the land under it. In the year 1873 parties were desirous to enlarge and extend the ditch. That one Nils Ahlestrom, with numerous others, was a stockholder in the same, and was owner of two hundred and forty acres of land covered by the ditch, and that appellee and wife (whose agent he was) became the owners of the Ahlestrom land, and had the title at the time of the trouble resulting in the bringing of this suit. In the year 1873 the ditch company appears to have been reorganized or incorporated, and became known as the "Golden City and Arapahoe Ditch Company," and under such name, on the 24th day of March, 1873, entered into and became a party to the following contract:

"This indenture, made and entered into this 22d day of March, A. D. 1873, by and between the Golden City and Arapahoe Ditch Company, of the county of Jefferson, of the first part, and William Bomberger, Francis Gallup, and William A. Rand, partners doing business under the name and firm style of William Bomberger & Co., of the county of Arapahoe, of the second part, and Nils Ahlestrom, Elihu Evans, Oliver Evans, Hiram Evans, North Evans, Eli Allen, William Allen, John Clark, J. P. Maschebeuf, Charles Rand, William Rand, E. W. Hyatt, John A. Ward, Harpin Davis, John W. Cook, and H. P. H. Bromwell, stockholders in the said ditch company, and owners of land under said ditch, of the third part, witnesseth, that whereas, the said William Bomberger, Francis Gallup and William A. Rand, by their said name and firm style of William Bomberger & Co., by a certain written agreement, made between said Golden City and Arapahoe Ditch Company and the said William Bomberger & Co., on the 20th day of March, A. D. 1872, and recorded on page 344 of volume No. 'L' of the records of the county of Jefferson, territory of Colorado, in the office of the county clerk and recorder of said county, did become the lessees of the right of way and ditch of said company lying in said county of Jefferson, and are at this time in pos-

session of said ditch and right of way under and by virtue of said lease.

" And whereas, it is desired to make certain other and further agreements for control and management of said ditch, and furnishing water for irrigation for the lands owned at this time by the said several parties of the third part from the said ditch, as well for the accommodation of the said parties of the first and second part as for the said parties of the third part, and for securing the said parties of the third part severally, and to each and every of their several assigns and vendees, lessees, and tenants of the said lands as now held severally by said several parties of the third part under said ditch, sufficient water from said ditch for the irrigation of the lands now owned or occupied or cultivated, or which may be hereafter cultivated by him or his assigns, as any part of the lands now owned or occupied by him under said ditch, upon the terms and conditions herein below set forth, which said lands so hereby intended to be irrigated from said ditch are set forth by the numbers thereof in a schedule annexed hereto, and marked ' List of Lands : ' Now, it is hereby covenanted and agreed on the part of said William Bomberger & Co. that the said William Bomberger & Co. shall pay off all indebtedness and cost necessary to be paid in order to secure the clear and complete right of way of and for said ditch from the head of said ditch to Ralston creek, in said Jefferson county, and to pay the fees of attorneys and counsel now due from said company for legal services in and about the incorporation thereof, and leasing and procuring the right of way by condemnation for said company for said ditch, and shall also pay the said stockholders, to each his proportionate share, the sum of $3,500, on or before the 24th day of March, 1874, and the further sum of $3,500 on or before the 24th day of March, 1875, for which said sums the said William Bomberger & Co. shall give to each of said stockholders their promissory negotiable note for the amount of his share thereof, in payment for a transfer by him to said William Bomberger & Co. of his share of stock in said ditch company, and, further,

said William Bomberger & Co. shall deliver to said stock-holders, for the crop season of 1873, 1,200 inches of water, to be delivered in all respects according to the terms of said lease, in full for interest upon said two deferred payments for which said notes are to be given, said notes bearing no interest till due; and at the time of making said notes said William Bomberger & Co. shall issue to each of said stock-holders a certificate for water from said ditch for the year 1873, entitling him or her to receive his proportionate share of said 1,200 inches of water from said ditch, to be delivered as aforesaid. And the said parties of the third part, each for himself, hereby covenants to and with the said party of the second part that, upon the making of said promissory notes and certificates for water, he will assign, transfer, and set over to the said party of the second part all the share or shares or parts of shares owned by him in said ditch company, in due form of law, according to the by-laws and usages of said ditch company; and the said party of the first part and the said party of the second part, jointly and severally, for themselves and each of them, their successors, assigns, transferees, and vendees, forever, do hereby covenant with the said several parties of the third part, to each severally, and to his or her heirs, executors, administrators, and assigns, vendees, or trans-ferees of the lands now owned or occupied by him under said ditch, as set forth in said schedule, that each and every of the said parties of the third part, his heirs, executors, adminis-trators, assigns, vendees, or transferees of the lands now owned by him as aforesaid, or any part thereof, shall, by this indenture, from and after this date, have the right to receive and have delivered to them and each of them severally from said ditch of said party of the first part, during the crop sea-son of the year 1873, and for every year thereafter, forever, so much water as may in fact be necessary and proper to amply irrigate all the lands under said ditch, owned or occu-pied by him or her, his or her lessees or agents, being part and parcel of the lands mentioned in said schedule; at all times from the 15th day of May unto the 15th day of Novem-

ber in each and every year said water to be furnished at the
rate of one dollar per inch, subject to all the terms and con-
ditions as to delivery thereof mentioned in said lease for the
delivery of surplus water to the stockholders of said ditch
company, as therein provided, and to be ordered and paid
for in the same manner as therein provided for the ordering
and paying for the said surplus water, and subject to the
further provision as in said lease that there shall be sufficient
water in Clear creek available to enable the said parties of
the first and second part, or either of them, to furnish the
water so required to be furnished.

  " And the said parties of the first part and second part do
further covenant in manner aforesaid with the said parties of
the third part severally, and their several assigns, heirs,
executors, and administrators, vendees, and transferees of
any of the said lands, that, if the said ditch company, or the
said party of the second part, their assigns or successors, or
whomsoever may be in control or management of the said
ditch, as the case may be, shall at any time willfully or malig-
nantly fail or refuse to comply with the terms of this inden-
ture as to the furnishing of said water to said parties of the
third part, or any or either of them, the party having right
to demand and receive any part of said water for the uses
aforesaid upon payment, or tender of payment, at the proper
time, and demand in writing for such water, said tender or
payment to be made to and said demand of the officer or
agent, if any, appointed by the parties owning or managing
said ditch, or, if there be no officer or agent appointed for
the purpose of receiving such demand and payment, then
such payment to be tendered to and demand made upon the
president, secretary, treasurer, or superintendent of said ditch
company, or person exercising control and management of
said ditch, it shall be lawful for the party so entitled to such
water to draw from and take all such water as he may be
entitled to at the time of such tender or payment, subject to
payment therefor on demand made by the officer or person
authorized to receive the same; but no person entitled to

receive any such water shall have the right to take the same after an offer to receive payment therefor shall have been made by an officer or person duly authorized to receive the same, and such payment be refused by the person taking such water, it being the true intent of this indenture that the covenants herein on the part of the parties of the first and second part touching the furnishing and delivery of said waters for said lands shall run with the rights of way and ditch of said party of the first part, and the rights therein of the party of the second part, and with said lands forever, and obligatory upon and in favor of the owners and proprietors of said ditch and lands; and that by virtue thereof the owners of said lands shall at all times enjoy the right of having and receiving from said ditch all water necessary for the irrigation of said lands, and none others, at the said price of one dollar per inch per season, on the terms and conditions aforesaid, any change in the ownership, control, or management of said ditch notwithstanding.

"In witness whereof the said Golden City and Arapahoe Ditch Company have caused their president, Elihu Evans, to set his hand hereto, and to seal the same with a scroll, (there being no common seal provided for said company,) for and on behalf of and as the act of said company, and the same to be countersigned by their secretary; and the said parties of the second and third parts also set their several hands and seals at Jefferson county, aforesaid, on this 24th day of March, A. D. 1873."

After making the above contract, it appears that prior to the year 1889 the ditch passed into other hands, and the company became "The Farmers' Highline Canal & Reservoir Company," (appellant,) but how is not shown. The contention of appellee is that, as successors of Nils Ahlestrom in the ownership of the land, he had a right to demand and receive whatever water was needed for his land, and, on failure of the ditch company to comply, he was, under the contract, authorized to enter upon the ditch and take the water. It appears from the record that an extended trial was had,

and a large amount of testimony was taken, but no bill of exceptions, nor any transcript of the evidence, or any part of it, is brought up; consequently this court has no means of knowing what the testimony established, or what issues of facts were tried and determined. The finding was for the defendant, an injunction refused, and an appeal prosecuted.

Messrs. PENCE & PENCE, for appellant.

Messrs. THOMAS, BRYANT & LEE, for appellee.

REED, J., delivered the opinion of the court.

It is obvious that appellant, by bringing up the record omitting the bill of exceptions and all evidence in the case, only desired a construction of the contract relied upon by the appellee. If it were practicable in any event to determine the rights and obligations of the respective parties upon a bill of this kind for injunctive relief only, it could not be reviewed without the entire case. It nowhere appears that the lower court construed the contract or predicated the judgment and decree upon it. So far as appears, it might have been based upon established facts not before this court. The rights and liabilities of parties under the contract cannot be determined in a proceeding of this kind. The parties with equal rights against the ditch company, as shown by the contract, are numerous. We have no means of knowing that the enforcement of the supposed right of defendant to demand and receive water, to any quantity desired, might not be injurious and detrimental to his co-contractors, whose rights are based upon the same contract. The capacity of the ditch is not given, nor is the reliable water supply stated. It is not shown that there is sufficient water to answer the increased demands of all those claiming under the contract. If the prior rights of all the parties to the contract, or of any of the parties, is not conceded by the ditch company, by bringing proper suit, and joining all proper interested parties, a construction of the contract might be had, and, if the rights of

priority were determined in favor of claimants, then there must be a further finding of the quantity to which each claimant is entitled, and the water equitably distributed. Then, in case of a refusal, a proceeding by *mandamus* or other proper remedy would compel the delivery of some given quantity to each. If each party be held entitled, not only to fix the amount he wants, but to take it himself, unrestrained, the appropriator might divert and appropriate all the water in the ditch to the exclusion of all others having equal rights. That part of the contract allowing each individual to take the water demanded, upon refusal of the company to deliver, must be held void and inoperative. *First*, it is a right incompatible with the ownership and right of control, incident to the ownership of the property; *second*, it was against public policy, tending to confusion and breach of the peace, in allowing a large number of claimants of priorities to take whatever water they required, regardless of the rights of others having the same legal right.

Even though the court may have found in the construction of the contract, and from the evidence, that appellee was entitled to the amount of water claimed, such finding is not stated, and, if so found, the court could not in equity justify the manner of taking. The court erred in refusing an injunction. Defendant should have been restrained from interfering with the management of the ditch, and forcibly taking water. As before stated, the rights of the parties could not be properly judicially determined by the proceeding instituted; nor will this court, in the absence of proper pleadings, parties, and *data*, attempt to decide upon the right of appellee to demand and receive any given quantity of water.

The only question properly presented for determination herein is the right of appellee to personally and forcibly take whatever water he saw fit from the ditch. This should have been found against him, and he restrained from the attempted exercise of any such supposed right, regardless of the provision in the contract. The decree is reversed and cause remanded.

*Reversed.*